**Hugo TEJADA, Petitioner–Appellant,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections, Respondent–Appellee.**

No. 89–6013.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1991.

Leonard J. Cooperman, Miami, Fla., for petitioner-appellant.

Joan Fowler, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Defendant-petitioner Hugo Tejada (Tejada) appeals the district court's denial of his petition for the writ of habeas corpus in a case arising from his convictions in the Florida courts of premeditated murder and burglary. We affirm the denial of Tejada's habeas corpus petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tejada was indicted for the premeditated murder of Dennis Alexander and for the burglary of Alexander's dwelling. At trial the Florida prosecutor (the State)—through the testimony of Alexander's wife, Karen Alexander; Tejada's girlfriend, Gail Megginnson; Tejada's roommate, Ramon Ortiz; Tejada's friend, Mary Ann Jones; the Hollywood, Florida, Police; and others—presented the following events surrounding the killing of Alexander and the burglary.

In June 1980, Tejada and Ortiz moved to Hollywood, where they became roommates. Shortly thereafter, on June 16, 1980, Tejada picked up a prostitute who turned out to be Megginnson. Alexander was Megginnson's pimp. Tejada saw Megginnson regularly after this initial encounter and fell in love with her.

Megginnson testified that Tejada disliked pimps, despised Alexander and thought that Alexander would be better off dead.[1] Megginnson further testified that, several weeks before the killing, Tejada told her he was going to kill Alexander and dump his body in the ocean; at the time, he showed

---

1. In a statement made to the Hollywood police following his arrest, Tejada said that Megginnson was afraid of Alexander and that he, Tejada, decided to do something about Alexander.

her a gun. He also told her that, because of Alexander's size, he needed someone's help.

Ortiz testified that, three times during the summer of 1980, Tejada asked Ortiz to help him kill someone and told Ortiz that he wanted to kill this person for money. Tejada revealed to Ortiz that he planned to tie up the victim's body and throw it into the ocean. Ortiz further testified that Tejada owned a pair of dumbbells, a toy gun and a real gun—a small .25 caliber weapon.[2]

Jones testified that, during that summer, Tejada asked her for money and, later, for a gun and a silencer. She provided Tejada with only a pellet gun, but he later told her that a friend named Rhonda would help him get a silencer.

According to Tejada's taped statement, he met Rhonda in August 1980. On September 8, he told Rhonda that he wanted to beat up Alexander. Rhonda agreed to help him and introduced him to Frank.[3] Frank agreed to help.

On the night of September 9, Tejada and Frank went to Alexander's house, which they entered without permission. Tejada claimed that, when Alexander appeared to be reaching for a rifle, Tejada fled with Alexander chasing him and with Frank chasing Alexander. At that point, Tejada claimed, Frank shot Alexander in the head and then stabbed him. The duo then wrapped the body in a blanket and put it in Tejada's car. They then returned to the house and waited for Alexander's wife.

Alexander's wife testified that, upon arriving home in the early morning hours of September 10, Tejada and Frank attacked her. Tejada held a gun to her head and Frank, with an unidentified object, demanded her money. Tejada told her that he had just shot Alexander and attempted to force her to open the Alexander's safe. Tejada also told her that Alexander would no longer "pimp on" Megginnson because Tejada had shot him. Alexander's wife, after sug-

gesting to Tejada and Frank that they could flee to New York, later escaped from the duo by making a scene at the airport. Following the successful escape of Alexander's wife, Tejada fled the airport by car.

Megginnson testified that Tejada visited her later that day and stated that, "It's over. Dennis is dead." He told her that he had shot Alexander in the head and that Frank had stabbed him. He said later that the body was in the car, but Megginnson declined to look at it, noticing a terrible smell coming from the trunk. He also told her that the jewelry stolen from the Alexanders had been taken to a pawnshop and melted down and that the proceeds from this pawnshop sale were split between him and Frank. He received no proceeds from the safe because he was not present when Frank opened it.

Tejada claimed in his sworn statement that, later that day, he and Frank disposed of the body. The duo dragged the body under a bridge; Frank tied up the body with rope and dumbbells and together they threw it into the water. On September 11, Hollywood police found the body under a bridge in Hollywood.

Tejada and Megginnson drove to New York City one week later; he drove in his car and she drove in Alexander's car. The couple were arrested on September 28 in Tejada's New York apartment. They were then questioned in New York by New York and Hollywood police. Tejada and Megginnson gave statements.

Tejada was charged, tried and convicted for the premeditated murder of Alexander and for burglary of Alexander's residence; he received concurrent life sentences. Tejada appealed his convictions to Florida's Fourth District Court of Appeal, which affirmed his convictions and sentences in a *per curiam* opinion in 1984. Tejada moved for post-conviction relief in the trial court during the following year. In a brief order, the trial court denied his motion. Teja-

---

**2.** Ortiz also corroborated Megginnson's testimony that during the summer of 1980 Tejada had tied up Megginnson, put a pillowcase over her head and threatened to kill her because he

thought she had stolen his gun. Tejada eventually found the gun under his mattress.

**3.** Tejada's taped statement indicates that he knew neither Rhonda's nor Frank's last name.

da appealed the denial to the Fourth District, which remanded the case so that the trial court could attach supporting record excerpts or hold an evidentiary hearing on Tejada's claims. On remand, the trial court denied relief again and entered an order thoroughly explaining its reasons. This order was affirmed *per curiam* by the Fourth District.[4]

In late 1988, Tejada filed a petition for a writ of habeas corpus in the federal district court. That court referred the writ to a magistrate judge, who recommended denying Tejada's petition. After overruling Tejada's objection to the magistrate's recommendations, the district court adopted the recommendations and denied relief. This appeal ensued.

## II. DISCUSSION

### A. Claims Not Addressed by the District Court

Tejada contends that the district court erred by failing to address issues that were properly before it: that the prosecutor knowingly used and exploited false testimony; that there existed a material discovery violation; and that defense counsel was ineffective because he failed to impeach a key prosecution witness with earlier inconsistent testimony.[5] Tejada argues that these claims merit habeas relief and that we should grant his petition or, at least, remand the case to the district court for an evidentiary hearing. We decline to do either.

Although the district court must make findings of fact and conclusions of law in a nonjury action, *Parnell v. Wainright*, 464 F.2d 735, 736 n. 1 (5th Cir.1972) (citations omitted); Fed.R.Civ.P. 52(a), with the failure to do so usually resulting in a vacated judgment or a case remanded for appropriate findings, *Armstrong v. Collier*, 536 F.2d 72, 77 (5th Cir.1976) (declining to remand habeas claim not addressed by district court); *see also Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 245 (5th Cir. Unit B June 15, 1981),[6] remand is sometimes unnecessary. This rule requiring findings of fact and conclusions of law serves to facilitate appellate review, *Armstrong*, 536 F.2d at 77, and

> remand is not required if a complete understanding of the issues is possible in the absence of separate findings and if there is a sufficient basis for the appellate court's consideration of the merits of the case.

*Gulf Towing Co.*, 648 F.2d at 245; *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1549 (11th Cir.1987). Because the record on appeal in the instant case provides a complete understanding of the issues, we now address Tejada's claims for habeas relief that the district court failed to discuss.

#### 1. *Prosecutor's Knowing Use of False Testimony*

Tejada claims that he is entitled to habeas relief because the prosecutor knowingly used and exploited false testimony—a so-called *Giglio* violation. *See Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). He contends that the prosecutor elicited testimony from Ortiz at trial that Tejada owned a .25 caliber pistol—the caliber of the unrecovered murder weapon—and that the prosecutor exploited this testimony in his closing argument to the jury. Tejada states that the prosecutor knew that Ortiz had given the Hollywood police a sworn statement that Tejada

---

4. While Tejada's motion for post-conviction relief worked its way through the courts, he filed petitions in the Fourth District for a writ or error coram nobis, alleging the discovery of new facts and witnesses which would have prevented his conviction, and a writ of habeas corpus ad testificandum, alleging that political intervention had undermined his trial and led to the concealment of the person responsible for Alexander's death. Both petitions were denied without opinion.

5. Subsection B addresses this third claim and Tejada's other ineffective assistance of counsel claims.

6. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

owned a .32 caliber gun and that the prosecutor attended a deposition at which Ortiz said that Tejada owned a .22 caliber gun.

The State contends that this claim is unexhausted because it was never raised in the state post-conviction collateral relief proceeding pursuant to Florida Rule of Criminal Procedure 3.850.[7] The State also contends that the claim is procedurally barred because Tejada failed to raise the issue at trial or on direct appeal, which under Rule 3.850 would bar collateral review of the claim by the state courts.

For purposes of this discussion, we assume that Tejada has exhausted his claim. We must determine, therefore, whether Tejada has procedurally defaulted his claim so that we would be barred from considering the merits of that claim, absent of course a showing of cause for and prejudice from the procedural default. *See Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ We conclude that Tejada has procedurally defaulted his claim. A petitioner in Florida is not entitled to collateral relief "based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Fla.R.Crim.P. 3.850; *cf. Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, ─ U.S. ──, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990). That the defendant knew of Ortiz's earlier inconsistent sworn statements and could have objected when the prosecutor elicited Ortiz's testimony is sufficient to determine that Tejada procedurally defaulted this claim by failing to raise the issue at trial. We decline, however, to remand this claim to the district court to determine whether Tejada can make a *Wainright v. Sykes* showing of "cause" and "prejudice" be-

cause, based on our review of the record, we see no prejudice to Tejada from this alleged *Giglio* violation.

■ Although the State has a duty not to present or use false testimony in criminal trials, *Brown v. Wainright*, 785 F.2d 1457, 1464 (11th Cir.1986) (citing *Giglio*), "[n]ot every use of false evidence entitles a defendant to the writ [of habeas corpus]." *Id.* at 1465. We recognize that false evidence includes "the introduction of specific misleading evidence important to the prosecution's case in chief." *Troedel v. Wainright*, 667 F.Supp. 1456, 1458 (S.D.Fla. 1986), *aff'd*, 828 F.2d 670 (11th Cir.1987) (adopting explicitly district court order). Before Tejada would be entitled to relief, however, he "must prove that the false evidence was 'material' in obtaining his conviction." *Brown*, 785 F.2d at 1465. We are unconvinced that Ortiz's testimony about the caliber of Tejada's gun was material in obtaining his conviction.

False testimony becomes material when "there is 'any reasonable likelihood that [it] could have affected the jury.'" *Id.* at 1465–66 (citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985)). The standard of review applicable to the knowing use of false testimony is the harmless-error standard. *See Bagley*, 473 U.S. at 680 n. 9, 105 S.Ct. at 3382 n. 9. In the light of the other evidence presented at trial—particularly, Megginnson's and Alexander's wife's testimony that Tejada told them he had shot Alexander—Ortiz's testimony concerning the exact caliber of the gun seems to be immaterial. No reasonable likelihood exists that Ortiz's testimony could have affected the jury's verdict.

---

**7.** Tejada contests the exhaustion argument. He states that he raised this issue as Ground L in his Supplemental Post Conviction Relief Motion (a copy of which was attached to his reply brief to this court) that was filed more than a year after the last previous amendments to his Motion for Post-Conviction Relief. It is not clear whether this Supplemental Post-Conviction Relief Motion was submitted to the state trial court or whether the state trial court accepted this filing. In his otherwise thorough Order Deny-

ing Post-Conviction Relief, the state trial court judge made no reference to or conclusions about the Supplemental Motion, although the judge referred specifically to Tejada's original motion and his first and second amendments. Likewise, the Supplemental Post-Conviction Relief Motion does not appear in the appendix to the State's response to the district court's order to show cause—an appendix that otherwise contains a complete record of the proceedings in Tejada's case.

We are also unconvinced that the use of Ortiz's testimony was false in the *Giglio* sense. Unlike in *Giglio*, where the government failed to disclose a promise made to a key witness and then depended almost entirely on that key witness' testimony, in the instant case Tejada was fully aware at trial of the already conflicting sworn statement and deposition and of the inconsistency between Ortiz's testimony and his earlier statements. Furthermore, at trial Tejada's counsel brought out on cross-examination the inconsistency between Ortiz's testimony and his earlier sworn statement. So, because the jury was made aware of the inconsistency, the "false" testimony could not affect the judgment of the jury.

### 2. *Material Discovery Violation*

Tejada contends that the prosecution's material discovery violation—its failure to disclose that Gail Megginnson was arrested the day before the start of trial—warrants habeas relief. The government argues, and the state trial court agreed, that these claims are procedurally defaulted because Tejada failed to raise the issue on direct review.[8] But Tejada contends that, because the state court also reached the merits of the federal constitutional issue, we are not barred from reviewing the issue because the state court opinion fails the "plain statement" test of *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). He also contends that, because the state trial court's decision was affirmed *per curiam* without opinion, the "plain

---

[8.] Tejada claims that he was not apprised of the circumstances regarding the violation until six weeks after his trial and did not receive the documentation until three years after he was convicted. But as the trial court pointed out—and as Tejada himself states in his brief—Tejada found out about Megginnson's arrest from Mary Ann Jones and informed his counsel of the arrest *at trial*.

[9.] As the Supreme Court recognized in *Nunnemaker*, —— U.S. at ——, 111 S.Ct. at 2594, this is the approach followed by the Eleventh Circuit. In *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990), we stated that "the policy reasons discussed in *Harris* are not compromised by applying the plain statement rule to the last state court that rendered judgment *and* provided reasons for the judgment." 894 F.2d at 1273. We therefore concluded:

statement" rule requires that we review the merits of his claim. We disagree.

The Supreme Court in *Harris* held that a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Id.* at 262, 109 S.Ct. at 1043. After oral argument in the instant case, the Supreme Court in *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), held that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." *Nunnemaker*, —— U.S. at ——, 111 S.Ct. at 2591–92.[9]

We have long recognized that "[a] state court is entitled to express its views on federal constitutional issues without waiving its procedural default rules." *Pelmer v. White*, 877 F.2d 1518, 1520 (11th Cir. 1989) (quoting *Hall v. Wainwright*, 733 F.2d 766, 777 (11th Cir.1984)); *see also Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. 1044 n. 10 (state court can reach merits of federal claim in alternative holding). Thus, we must consider whether the state trial court's statement disposing of Tejada's claim meets the test of the "plain statement" rule; if so, we are barred from reviewing the merits of his claim, absent cause and prejudice.[10]

Before this court can deny the [habeas] petition on the grounds of state procedural default, there must have been a clear and express statement by the state trial court that its judgment is based upon procedural default. This court can then conclude without any doubt that the state court per curiam affirmance order was also based upon that ground. 894 F.2d at 1274.

[10.] "A defendant who is procedurally barred from raising a federal constitutional claim in state court is also barred from raising the claim in a federal habeas petition unless he can show cause for and actual prejudice from making the default." *Smith v. Newsome*, 876 F.2d 1461, 1465 (11th Cir.1989) (quoting *Gates v. Zant*, 863 F.2d 1492, 1500 (11th Cir.1989)).

■ The state trial court in Tejada's post-conviction relief proceeding found that Tejada's claim of a material discovery violation was procedurally barred. Relying on Florida Rule of Criminal Procedure 3.850, it stated that "this issue could have been raised at the time of trial and on direct appeal, but was not, and review is therefore precluded." Only after stating this did the state court address other aspects of the claim.[11] Considering the state trial court's language, we conclude that, despite the state court's consideration of the merits of Tejada's claim, it clearly and expressly stated that its disposition of the claim rested on a state procedural bar. Under the "plain statement" rule of *Harris v. Reed,* the state trial court's statement—that Tejada's failure to raise the issue at trial and on direct review barred the state court from considering the issue on collateral review—which was affirmed *per curiam* by Florida's Fourth District Court of Appeal, is a sufficiently plain statement invoking a state procedural bar to prevent us from reaching the merits of the issue, absent a showing of cause for and prejudice from the procedural default.

■ We decline to remand this claim to the district court to determine whether Tejada can establish cause for and prejudice from his procedural default because we have discovered no prejudice. The alleged discovery violation was harmless; therefore, even if Tejada could show cause for his procedural default, he can show no prejudice from the constitutional error because he would not be entitled to relief. In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." A *Brady* violation, thus, occurs where (1) the prosecution suppresses evidence; (2) the evidence is favor-

able to the defendant; and (3) the evidence is material to the issues at trial. *See Stano v. Dugger,* 901 F.2d 898, 899 (11th Cir. 1990) (en banc). The Supreme Court has stated that

> evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *see also Francis v. Dugger,* 697 F.Supp. 472, 477 (S.D.Fla.1988) ("[T]here must be a reasonable likelihood that the testimony could have affected the judgment of the jury."), *aff'd,* 908 F.2d 696 (11th Cir.1990).[12] In addition, when a defendant's guilt may turn on the credibility of a particular witness, the prosecutor's nondisclosure of evidence on the witness' credibility or bias may deprive the defendant of the right of confrontation. *Francis,* 697 F.Supp. at 475. But this too is viewed in the light of the harmless-error analysis of whether the evidence could have affected the judgment of the jury. *Id.* at 476, 477.

Having reviewed the testimony in this case, particularly Megginnson's examination and cross-examination, we conclude that the nondisclosure of the information that Megginnson was arrested on a probation-violation warrant the day before Tejada's trial was to begin is immaterial because there is no reasonable probability that disclosure of the arrest would have changed the result of the proceeding. *See Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. The jury was fully acquainted with what the state trial court in the post-conviction relief proceeding described as Megginnson's "somewhat checkered past": Megginnson testified on direct examination and cross-examination that she had pleaded guilty to grand theft (for the theft of Alexander's car) and, further, that she was tes-

---

11. The state court addressed and stated views on two different issues: (1) the state law issue of whether the evidence of Megginnson's arrest would have been admissable at trial; and (2) the federal constitutional issue of whether any constitutional error was harmless.

12. A court's consideration of an alleged *Brady* violation is subject to a harmless-error analysis. *Francis,* 697 F.Supp. at 477.

tifying as a condition of her probation; defense counsel extensively cross-examined Megginnson on her violation of her probation condition that she get a job, on her past history of and numerous arrests for prostitution, on her earlier alcohol and drug abuse (which included cocaine), and on her use of aliases; and Tejada testified that, before the Alexander murder, Megginnson had been arrested for car theft and that the charges against her were dropped only when he agreed to reimburse the victim for the expense of renting a car while his car was missing. Given all this evidence on Megginnson's credibility—or lack thereof—and her incentive to testify, there is no reasonable probability that the introduction of this undisclosed evidence of her pretrial probation-violation arrest would have affected the judgment of the jury or the outcome of the trial.

## B. Denial of Evidentiary Hearing on Ineffective Assistance of Counsel Claims

Tejada contends that his defense counsel rendered ineffective assistance and that the district court should have, at the very least, granted him an evidentiary hearing on his ineffective assistance of counsel claims.[13] The State responds—as the district court found—that the acts and omissions about which Tejada complains are within the realm of strategic or tactical decisions, which cannot be the basis for finding counsel ineffective, or are unsupported allegations, conclusory in nature and lacking factual substantiation. We agree.

■ A petitioner is entitled to an evidentiary hearing if he alleges facts which, if true, would warrant habeas relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc); *see also Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir.1989) (evidentiary hearing warranted if material facts

not adequately developed in district court or state habeas proceeding); *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir.1987). A petitioner is *not* entitled to an evidentiary hearing, however, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Stano*, 901 F.2d at 899; *see also Diaz v. United States*, 930 F.2d 832, 834 (11th Cir.1991) (evidentiary hearing need not be conducted "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). In addition, when considering whether an evidentiary hearing should be held on habeas claims based on occurrences outside the record, "no hearing is required if the allegations 'viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir.1989) (habeas case of federal prisoner) (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.1985)).

■ To be granted an evidentiary hearing on his claims of ineffective assistance of counsel, Tejada needed to make allegations which, if true, would entitle him to relief. He has failed to do so. After considering Tejada's claims and reviewing the state trial court record, the post-conviction relief proceedings and the district court record, we conclude that Tejada received "reasonably effective assistance of counsel." *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, we adopt with approval the findings of the district court on Tejada's failure to demonstrate that his counsel was ineffective based upon *Strickland*'s two-pronged test. *See Id.* at 687, 104 S.Ct. at 2064. We also conclude that, because the evidence against Tejada is overwhelming, Tejada has not demonstrated that the

---

**13.** Tejada raises the following claims of ineffective assistance of counsel: (1) failure to impeach Ortiz with his earlier inconsistent sworn statements; (2) failure to apprise the trial court of a material discovery violation (Megginnson's pretrial arrest); (3) counsel's demand that the prosecution call a witness extremely unfavorable to the defense; (4) failure to investigate

material facts relating to Tejada's previous conduct in retrieving Megginnson's clothing; (5) failure to object to impermissible prosecutorial statements during closing arguments; (6) unethical conduct; (7) failure to apprise the trial court of juror Pew's concealment of material facts during voir dire; and (8) failure to investigate possible witness intimidation.

alleged errors, if true, would have so prejudiced his defense that "there [would be] a reasonable probability that ... the result of the proceeding would have been different" if his counsel had not committed the alleged errors. *See id.* at 694, 104 S.Ct. at 2068.

### C. Claims of State Law Violations

Tejada contends that the district court erred in denying him habeas relief based on certain violations of Florida laws or rules that occurred during his trial: (1) denial of a motion to depose a juror; (2) admission of extrinsic offense evidence; (3) admission of a coconspirator's hearsay statement; and (4) deficient jury instructions on conspiracy and judicial comments on the evidence of conspiracy. We disagree.

■■■ Questions of state law rarely raise issues of federal constitutional significance, because "[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright,* 699 F.2d 1053, 1053–54 (11th Cir.1983) (citations omitted). We review questions of state law in federal habeas proceedings only to determine whether the alleged errors were so critical or important to the outcome of the trial to render "the entire trial fundamentally unfair." *Id.* at 1054 (defective jury charge raises issue of constitutional dimension "only if it renders the entire trial fundamentally unfair"); *see also Futch v. Dugger,* 874 F.2d at 1487 (improperly admitted evidence "must be inflammatory or gruesome, and so critical that its introduction denied petitioner a fundamentally fair trial"). "[T]he established standard of fundamental fairness [when reviewing state evidentiary rulings] is that habeas relief will be granted only if the state trial error was 'material in the sense of a crucial, critical,

highly significant factor.'" *Shaw v. Boney,* 695 F.2d 528, 530 (11th Cir.1983) (quoting *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.1976)). Based on these standards, we now address Tejada's claims.

### 1. *Denial of Motion to Depose Juror*

In the course of post-trial proceedings, the trial court denied Tejada's motion to depose juror Rhonda Pew who was quoted in a newspaper article as stating that, "A couple of us thought we would save his neck. Then it started to look hopeless." Defense counsel argued, in the context of suggesting juror misconduct requiring Pew's deposition, that this quote implied that jurors discussed the case before jury deliberations were properly to begin because Pew did not participate in deliberations.[14] On this speculative basis,[15] Tejada contends that the trial court erred in denying the defense's motion to depose Pew. The State responds that the magistrate correctly determined that the trial judge did not abuse his discretion in denying the motion because Pew did not deliberate. The State also argues that this is an issue of state law which provides no basis for federal habeas relief.

■■■ Construing Tejada's *pro se* petition liberally, we read Tejada's claim as one of juror misconduct. While this claim implicates federal constitutional concern for an impartial jury, we have stated in more factually compelling circumstances that the trial court "has discretion to determine whether evidence of premature deliberation warrants an evidentiary hearing." *See United States v. Cuthel,* 903 F.2d 1381, 1382 (11th Cir.1990) (affirming federal district court's denial of post-trial investigation of preliminary deliberation where defendant received note from juror stating "we were pressured into making our deci-

---

**14.** Pew failed to appear on the last day of trial and was replaced by an alternate juror.

**15.** Nothing in the newspaper article established that even informal deliberations started before the end of the pertinent trial. The article does not say when Pew made this alleged statement or to whom it was made; the article was published about one month after the trial ended.

So, even if the quote is accurate, it is consistent with a conclusion Pew might have drawn from conversations with other jurors after the trial, recalling and expressing their individual feelings as the trial progressed. Thus, the newspaper article is a poor indicator of premature deliberations.

sion"); *see also United States v. Edwards,* 696 F.2d 1277, 1282 (11th Cir.1983). "To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show 'clear, strong, substantial and incontrovertible evidence ... that a specific, non-speculative impropriety has occurred.'" *Cuthel,* 903 F.2d at 1382 (quoting *United States v. Ianniello,* 866 F.2d 540, 543 (2d Cir.1989) (internal quotation marks omitted)). Unless extraneous information has been brought to jurors' attention or outside influences have been brought to bear upon them, federal courts refuse to question jurors after the verdict is rendered—especially when the inquiry concerns juror misconduct before deliberations. *Id.; see also United States v. Griek,* 920 F.2d 840, 843 (11th Cir.1991); Fed.R.Evid. 606(b).

■ Taking this federal practice as the limit of what is required by federal constitutional concerns for an impartial jury, we conclude that Tejada has stated no claim for habeas relief. He has failed to demonstrate specifically and without speculation that jury impropriety has occurred; more important, he has failed to demonstrate, or even to allege, the presence of extraneous information or outside influence.

2. *Admission of Extrinsic Offense Evidence*

■ Tejada says that the district court erred in not finding that his trial was made fundamentally unfair by the state trial court's admission of extrinsic offense that Tejada had once put a pillowcase over Megginnson's head, tied her up and threatened to kill her. Ortiz and Megginnson testified about the event and indicated that Tejada did it because his gun was missing and he thought Megginnson might have taken it.[16] Tejada argues that the evidence was improperly admitted *Williams'* Rule evidence[17] because it only served the purpose of convincing the jury that he had a propensity to commit violent crimes. We ex-

press no opinion on the propriety of admitting this evidence because, regardless of that question, the admission of this evidence did not deprive Tejada of a fundamentally fair trial. The evidence was not "material" to his conviction "in the sense of a crucial, critical, highly selective factor," *Shaw,* 695 F.2d at 530, because the state presented far more powerful evidence of Tejada's guilt through, among other things, the testimony of Megginnson and Alexander's wife.

3. *Coconspirator Hearsay Testimony*

■ Tejada argues that his trial was made fundamentally unfair by the admission of coconspirator Frank's hearsay statements to Alexander's wife that he and Tejada had been paid to do the job—implying a contract killing—and that they had shot Alexander between the eyes. Under Florida law, a coconspirator's hearsay statement is admissible if the statement was made "during the course, and in furtherance, of the conspiracy." Fla.Stat. § 90.803(18)(e). Tejada contends that these hearsay statements were improperly admitted because they were not made during the course of the conspiracy: at the time the statements were made, Alexander had already been killed, and the conspiracy to kill him had ended. The conspiracy, however, encompassed two objects: to kill Alexander and to burglarize Alexander's house. Frank made his statements to Alexander's wife after Alexander was shot but before the burglary was consummated. The conspiracy was clearly *not* complete when the statements were made, and, thus, the statements were properly admitted. Even if the statements were improperly admitted, we are not persuaded that, given all the evidence the state presented against Tejada, the admission of the statements of Tejada's coconspirator rendered the entire trial fundamentally unfair.

---

**16.** Tejada admitted tying up Megginnson, but testified: "It was strickly [sic] for the reason to make love to her, why she was tied up."

**17.** *Williams'* rule evidence relates to evidence of similar facts. *See Williams v. State,* 110 So.2d 654 (Fla.), *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).

### 4. Deficient Jury Instructions and Court's Comment on Conspiracy Evidence

 Tejada also contends that the trial court's allegedly deficient jury instructions on conspiracy and the admission of the coconspirator's statements, as well as the court's comments on the evidence of conspiracy, rendered the trial fundamentally unfair.[18] He relies on *Boyd v. State*, 389 So.2d 642, 647 (Fla.App. 2d Dist.1980),[19] to argue that, when a coconspirator's hearsay statement is admitted, an instruction on conspiracy must be given which defines conspiracy, explains the legal consequences of proving conspiracy and instructs the jury that they must determine whether a conspiracy has been proven beyond a reasonable doubt. Tejada argues that his trial was rendered fundamentally unfair because the trial court did not tell the jurors that it was their responsibility to determine whether a conspiracy had been established beyond a reasonable doubt. We disagree with Tejada's application of *Boyd* to his case. In *Boyd*, the hearsay statements of the defendant's coconspirators were used to impose vicarious liability on the defendant based on his participation in the conspiracy; in this case, Tejada's coconspirator's statements were admitted to aid in establishing elements of the state's case relating to premeditation and intent.[20] Nor do we believe that the failure of the court to give such an instruction rendered the trial fundamentally unfair: the evidence against Tejada, apart from the statements of his coconspirator, compelled a conviction.

 We also disagree with Tejada's contention that the court's statement that it believed the State had other independent evidence of the conspiracy rendered the trial fundamentally unfair. The court's statement was anticipatory: it merely explained to the jury that the independent evidence of conspiracy had not yet been introduced and that the coconspirator's hearsay statement had been admitted because the State indicated that it had such independent evidence that it would present later. The court's statement that it would take action if the State failed to present the independent evidence of conspiracy reinforces that message. We also note that the trial court, immediately before dismissing the jury to deliberate, instructed them that nothing it had said in the course of the trial should be considered any intimation as to the verdict they should deliver.

### D. The Voluntariness of Tejada's Confession

Tejada argues that his sworn, tape-recorded statement was involuntary and, as such, should have been suppressed by the trial court. The State responds that the statement was voluntary and was properly admitted into evidence. We agree with the State.

---

**18.** Following defense counsel's objection, the court gave an instruction on conspiracy, in which it stated in part that,

The State has to introduce other independent evidence of a conspiracy before you can consider the words or acts of Frankie as being attributable to the Defendant, Mr. Tejada, in this case. *Now, I let the statements of Frankie in because I have a very strong feeling the State has other independent evidence linking Frankie to Mr. Tejada.* If they don't have other independent evidence other than words that were said either by Frankie or by Mr. Tejada, then I'll take whatever action is necessary. *But I'm presuming the State has other independent evidence of a conspiracy....*

Tejada contends the court improperly expressed its opinion of the evidence in the emphasized text.

**19.** We note that *Boyd* would not have been directly binding on the trial court in Tejada's case because the trial was held within the jurisdiction of Florida's Fourth District Court of Appeal.

**20.** In *Saavedra v. State*, 421 So.2d 725, 727 (Fla. App. 4th Dist.1982), the Fourth District indicated that, when a defendant is not charged with conspiracy and his culpability is not premised on vicarious liability, he is entitled to a jury instruction, if he requests it, on the definition of conspiracy and the necessity of independent evidence of the conspiracy and of his participation therein. If at the conclusion of the evidence the judge is satisfied that the prosecution has shown the defendant's participation in the conspiracy by a preponderance of the evidence, the defendant is entitled only to an instruction on the testimony of accomplices; no further conspiracy instructions are necessary. *Id.*

Although the voluntariness of a confession is not an issue of fact that is entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d) (because the ultimate issue of voluntariness is a legal question requiring independent consideration in a federal habeas proceeding), the state court's findings of fact regarding voluntariness are accorded credit. *See Miller v. Fenton,* 474 U.S. 104, 115, 117, 106 S.Ct. 445, 452, 453, 88 L.Ed.2d 405 (1985). One issue of fact on which the state court's finding is entitled to credit is credibility. When it appears that a trial court would have granted the relief sought if it had believed the defendant's testimony, then "its failure to grant relief was tantamount to an express finding against the credibility of the defendant." *See Marshall v. Lonberger,* 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). In the instant case, the state court implicitly found that Tejada's testimony was not credible by denying his motion to suppress the statement. After reviewing the record, we agree with the district court that there was ample support for this finding.

### III. CONCLUSION

The district court's denial of habeas corpus relief is AFFIRMED.