[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15758
Non-Argument Calendar

_____

D. C. Docket No. 05-02723-CV-TWT-1

MIGUEL ANGEL DURAN,

Petitioner-Appellant,

versus

WARDEN VICTOR WALKER,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 29, 2007)**

Before BIRCH, WILSON and FAY, Circuit Judges.

PER CURIAM:

Miguel Angel Duran, a Georgia prisoner proceeding pro se, appeals the

district court's denial of his 28 U.S.C. § 2254 habeas corpus petition.  Duran raises

two issues on appeal: (1) whether there was sufficient evidence to support his convictions; and (2) whether his trial counsel was ineffective for failing to call an expert witness. For the reasons set forth more fully below, we affirm.

## I. Procedural and Factual History

Duran, who is serving a 12-year sentence for aggravated sexual battery and rape, filed a § 2254 petition in the district court alleging, among other things, that the evidence was insufficient to support his convictions and that he received ineffective assistance of his trial counsel. As to his insufficiency of the evidence claim, Duran alleged that (1) despite the victim's testimony that she had no bruises on her body prior to the rape, two other witnesses testified that the victim did have bruises on her body prior to the rape; (2) while the victim testified that she screamed loudly during the rape, two witnesses that lived in the house where the rape occurred testified that they did not hear the victim scream; and (3) the state's expert witness testified that there was no evidence of semen on the victim's body and that the bruises on her body could not be directly attributed to Duran. Accordingly, Duran claimed that the jury's verdict was inconsistent with the evidence presented at trial. Concerning his ineffective-assistance-of-counsel claim, he asserted that his trial counsel was ineffective for failing to call an expert toxicologist as a witness in support of his defense that he was intoxicated from

2

paint fumes at the time he provided statements to police. Duran maintained that, had his counsel called an expert toxicologist, there was a reasonable probability that the court would have suppressed his statements to police.

Prior to trial, the state trial court held a suppression hearing, pursuant to Jackson v. Denno[1], in order to determine the admissibility of Duran's statements that he made during an interview with police. At the hearing, Eric Edkin, a detective for the Gwinnett County Police Department, testified that he interviewed Duran and read him Miranda[2] warnings at the beginning of the interview. Detective Edkin stated that Duran did not appear to be under the influence of alcohol or narcotics during the interview, and that Duran responded to Edkin's questions coherently.

Duran also testified at the suppression hearing. He stated that he worked as a painter and had been painting with oil-based paints for 12 or 13 hours on the day of his interview with police. He explained that, when he arrived home from painting, there were police officers at his house. Duran testified that he told the officers that he had been painting all day and "was feeling a little crazy." He stated that he was confused during the interview because of his exposure to the paint

---

[1]Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

[2]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3

chemicals and the police officer's poor Spanish speaking skills.

Also during the suppression hearing, the state played a videotape of the officers' interview of Duran. The trial court determined that, based upon the videotape and the testimony, Duran knew and understood his rights, and provided voluntary statements to police. Thus, the court denied the motion to suppress and ruled that Duran's statements were admissible at trial.

At trial, the victim testified that she rented a room in Duran's house. The victim stated that, on the night of the rape, Duran had been out drinking and he came to the victim's room when he came home. She further testified that Duran put his hand over her mouth, forced her legs open, inserted his penis into her vagina, placed his mouth on her vagina, and penetrated her vagina with his fingers, all without her consent. She explained that she resisted the encounter and screamed for help. On cross-examination, the victim testified that there were four other people in the house during the incident and that they were downstairs from her room. At the end of the cross-examination, Duran's counsel had the following exchange with the victim:

> Duran's counsel: But, in fact, [Duran] didn't have sex with you; isn't that correct?
> Victim: Yes, yes. He had - -
> Duran's counsel: No further questions.

On re-direct, the victim stated that she did not have any bruises on her body at the

4

time of the incident.

Holly West, a medical examiner for the Gwinnett Sexual Assault Center, testified that she performed a sexual assault examination on the victim. West identified pictures that she took of the victim during the examination, which showed bruises on the victim's chin and neck. West stated that she did not find any semen on the victim. West also testified that the victim had injuries to her vagina. On cross-examination, West stated that she could not ascertain the identity of the object that injured the victim.

Eva Avila testified as a witness for Duran. Avila stated that she lived in Duran's house at the time of the incident. Avila explained that she saw the victim the morning after the incident and she saw that the victim was crying and had bruises on her body. Avila testified that she was downstairs during the night of the incident and did not hear any screams.

Azala Alejandro, another resident living at Duran's house during the incident, also testified for the defense. Duran's attorney asked Alejandro whether she saw the victim "prior to the alleged rape, and did she have any marks or bruises on her body." Alejandro answered "yes." Alejandro also testified that she did not hear any screams on the night of the incident. Alejandro stated that she found the victim crying in her room after the incident occurred and that the victim told

Alejandro that she hoped "this never happens to your children, what he did to me."

Duran testified in his own defense. He stated that he never had sex with the victim on the date of the alleged rape, but that he only had kissed and touched her. He testified that the victim never screamed during their encounter. Duran also stated that, after the encounter with the victim, he went to work painting all day. He explained that, when he arrived home from work, police officers were at his house and he was confused about why the officers were there. On cross-examination, the state played the videotape of Duran's interview with the officers, and the court allowed Duran, over objection from the state, to explain his actions during the interview. Duran stated that he "had been working with paint with chemicals, thinner, for 12 to 13 hours. That means that I was not feeling very well when they were interviewing me at that time."

The jury found Duran guilty of rape and aggravated sexual battery. The court sentenced Duran to 12 years' imprisonment, followed by 8 years' probation. Duran moved for a new trial, but the court denied his motion. Duran then appealed his convictions and the denial of his motion for a new trial to the Georgia Court of Appeals.

On direct appeal, Duran argued, among other things, that the evidence was insufficient to support his conviction and that his counsel was ineffective for

failing to call an expert to testify concerning the effects of paint fumes on his

mental state during the police interview. See Duran v. State, 619 S.E.2d 388, 390-

91 (Ga. Ct. App. 2005). The court made the following findings of fact:

> Viewed in the light most favorable to the verdict, the evidence shows that on July 26, 2000 the victim was living in a rented room in Duran's house. That morning, Duran returned to the residence after a night of drinking and entered the victim's bedroom with the intent of having sex with her. He started touching her, forcing her legs apart and holding her face so she would not yell, and placed his mouth upon and inserted his penis and finger into her vagina. She resisted and began to scream. After the encounter, she left the residence in tears.
> On the night of his arrest, Duran was taken to the Gwinnett County Police Department for a videotaped interrogation. The questions were asked and answered in both English and Spanish, depending upon Duran's need for translation. At the outset of the interrogation, he was instructed of his Miranda rights in Spanish, after which he agreed to answer questions without the presence of counsel.

Id. at 390.

As to Duran's sufficiency of the evidence argument, the court cited to

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and

found that the evidence was sufficient for a rational trier of fact to find Duran

guilty of rape and aggravated sexual battery beyond a reasonable doubt because

(1) the victim's testimony establishing forcible penetration was alone sufficient to

sustain the conviction; (2) the medical examiner's testimony indicated that the

victim's wounds were consistent with her account of sexual assault and indicated

forced penetration; and (3) the jury was well within its province to disbelieve the

testimony of Duran and the other witnesses. Duran, 619 S.E.2d at 390-91.

With regard to Duran's ineffective-assistance-of-counsel argument, the court found that there was sufficient evidence to support the trial court's finding that Duran's custodial statements were voluntarily given. Id. The court specifically determined that (1) Duran's Miranda warnings were proper; (2) Duran indicated that he understood his rights during the interview and indicated that he was willing to cooperate without the presence of counsel; and (3) the police officer testified at the suppression hearing that Duran responded to the questions coherently, he did not appear to be under the influence of alcohol or drugs, and that his statements were voluntarily given. Id. The court thus concluded that, because Duran's statements were voluntary, he could not show that he was "prejudiced by his counsel's failure to call an expert to provide cumulative evidence about the alleged effects of paint fumes . . . . Such testimony would not have changed the fact that the trial court properly admitted the custodial statements . . . ." Id. In so finding, the court cited Johnson v. State, 570 S.E.2d 344, 345 (Ga. Ct. App. 2002), which in turn cited the ineffective-assistance-of-counsel standard set forth in Strickland. Duran, 619 S.E.2d at 391-92.

Based upon the above-detailed record, the magistrate judge recommended denying Duran's § 2254 petition. Concerning Duran's sufficiency of the evidence

8

claim, the magistrate found that the state court cited and relied upon the proper controlling Supreme Court authority, Jackson v. Virginia, in concluding that the evidence was sufficient to support Duran's convictions. The magistrate also found that Duran had not provided clear and convincing evidence to dispute the state court's factual findings, and, thus concluded that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

As to Duran's claim of ineffective assistance of trial counsel, the magistrate determined that, while the state court did not explicitly cite Strickland, it utilized the proper standard from Strickland when it found that Duran was not prejudiced by his counsel's failure to call an expert witness. The magistrate found that Duran had not offered evidence disputing the state court's factual findings that his statements were voluntary and that he was not prejudiced by counsel's failure to call an expert witness. The magistrate also noted that Duran could not show that he was prejudiced because he did not point to any evidence that established that he was intoxicated at the time he gave his custodial statements and he failed to sufficiently develop his argument.

Duran objected to the magistrate's report and recommendation, reiterating the arguments he presented in his § 2254 petition. Over Duran's objection, the

9

district court adopted the magistrate's report and recommendation and denied Duran's § 2254 petition. Duran filed a notice of appeal, which the district court construed as an application for a certificate of appealability ("COA"). The district court granted Duran a COA on the following two issues: (1) whether there was sufficient evidence to support Duran's convictions; and (2) whether Duran received ineffective assistance of his trial counsel.

## II. Analysis

We review a district court's grant or denial of a § 2254 petition de novo, while the court's factual findings are reviewed for clear error. See Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998). Mixed questions of law and fact, including ineffective assistance of counsel claims, are reviewed de novo. Id.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-32, 110 Stat. 1214 (1996), governs this appeal because Duran filed his §2254 petition after the effective date of the AEDPA. As amended by the AEDPA, 28 U.S.C. § 2254(d) forbids federal courts from granting habeas relief on claims that were previously adjudicated in state court, unless the adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

Moreover, a state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, "[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence." Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005), cert. denied, 127 S.Ct. 427 (2006).

**A. Sufficiency of the Evidence**

11

Duran argues on appeal that the evidence produced at his trial was insufficient to support his convictions and that the jury's verdict was inconsistent with the evidence presented at trial. Duran points to four specific facts that he claims do not support his convictions: (1) the victim testified that she did not have any bruises on her body prior to the rape, but Avila and Alejandro testified that they each saw bruises on the victim's body before the rape occurred; (2) the victim's testimony, that she screamed loudly during the rape, was contradicted by Avila's and Alejandro's testimonies that they were in the house at the time of the rape and did not hear any screams; (3) there was no physical evidence to connect him with the rape, especially in the light of West's testimony that there was no semen found during the sexual assault examination of the victim and the wounds on the victim could not be directly linked to Duran; and (4) when his counsel asked the victim whether she had sex with Duran, the victim answered "no." Duran also broadly states that the state appellate court's decision was contrary to, or involved an unreasonable application of, Jackson v. Virginia, and that the state court's determination of the facts in light of the evidence presented was objectively unreasonable. Accordingly, Duran states that he is entitled to federal habeas relief.

In Jackson v. Virginia, the Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the

12

evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (emphasis in original). The Supreme Court noted that it is the duty of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and a reviewing court may not substitute its judgment as to whether it believes the evidence to be sufficient to sustain a conviction. <u>Id.</u>

In Georgia, "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will." O.C.G.A. § 16-6-1(a)(1). "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." O.C.G.A. § 16-6-1(a). "A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." O.C.G.A. § 16-6-22.2(b).

Here, to the extent that Duran argues that the sufficiency-of-the-evidence standard used by the Georgia Court of Appeals was contrary to, or an unreasonable application of, clearly established federal law, his argument is without merit. In reviewing Duran's sufficiency claim, the state appellate court relied upon the standard set forth in <u>Jackson,</u> and this standard is the proper one for reviewing

13

appellate challenges to the sufficiency of the evidence. See Duran, 619 S.E.2d at 390; see also Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89. Moreover, the state court properly found, as discussed in more detail below, that the evidence produced at Duran's trial was sufficient for a rational trier of fact to find Duran guilty beyond a reasonable doubt. See Duran, 619 S.E.2d at 390-91. Thus, Duran is ineligible for habeas relief under the first prong of § 2254(d).

The crux of Duran's argument centers on the second prong of § 2254(d): that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). It is well established, however, that a federal court will presume that the state court's factual determinations were correct, and a petitioner may rebut that presumption only with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Here, the state court determined that (1) Duran entered the victim's room with the intent of having sex with her; (2) Duran touched the victim, forced her legs apart, and held her face so that she would not yell; and (3) Duran inserted his finger and penis into the victim's vagina while the victim resisted. Duran, 619 S.E.2d at 390. As the state appellate court recognized, the victim's testimony as to forcible penetration was alone sufficient to support the conviction, and Duran's arguments concerning the discrepancies between the victim's testimony and the

14

witnesses's testimonies do not amount to clear and convincing evidence sufficient to overcome the presumption of correctness of the state court's factual findings. It was within the province of the jury to weigh the credibility of all the witnesses testimony and to determine that the victim's testimony was credible. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (explaining that it is the duty of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, any discrepancies between the victim's testimony and the testimonies of Avila and Alejandro concerning the victim's bruising or screaming were properly resolved by the jury as the trier of fact and, further, the state appellate court correctly deferred to the jury's credibility determinations.

Similarly, Duran's argument that there was no physical evidence to link him to the offense is also without merit. Although West could not directly link Duran to the crime, she testified at trial that the victim had bruises and wounds that were consistent with rape. See Duran, 619 S.E.2d at 391. In light of that evidence, and the victim's own testimony, there was sufficient evidence to support the jury's verdict, even though the medical expert testified that she did not find semen on the victim and could not link the victim's wounds directly to Duran.

Lastly, as to Duran's assertion that the victim actually testified that Duran

15

did not have sex with her, Duran's argument does not amount to clear and convincing evidence to rebut the presumption that the state appellate court correctly determined that Duran did forcibly penetrate the victim. In support of his argument, Duran points to the transcript of his counsel's cross-examination of the victim:

> Duran's counsel: But, in fact, [Duran] didn't have sex with you; isn't that correct?
> Victim: Yes, yes. He had - -
> Duran's counsel: No further questions.

This exchange between Duran's counsel and the victim is not clear and convincing evidence that Duran did not have sex with the victim because Duran's counsel never allowed the victim to finish her statement. In light of the fact that the victim testified in Spanish and had her testimony interpreted, the transcript is not clear as to whether the victim was answering Duran's counsel's question in the affirmative or was acknowledging counsel's question before she further explained her answer. As such, it appears that Duran is taking the victim's testimony out of context in an effort to support his position that no rape occurred. Such deceptive reliance on the victim's trial testimony, however, is not sufficient to rebut the state court's factual finding that a rape actually occurred.

Accordingly, the state appellate court's finding that there was sufficient

16

evidence to support Duran's convictions was not based on an unreasonable determination of the facts in light of the evidence presented at trial.

## B. Ineffective Assistance of Counsel

Duran argues that his trial counsel was ineffective for failing to call an expert witness at trial to testify regarding the effects that the paint fumes had on Duran's mental state at the time he gave statements to the police. Duran contends that, had an expert testified, there was a reasonable probability that his statements to police would have been suppressed or that the expert's testimony would have bolstered his involuntary intoxication defense. He further asserts that the expert's testimony would have made the jury more inclined to disregard his statements to police because juries tend to always believe experts over the testimony of defendants. Duran also broadly argues that the state court's decision was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, he argues that this Court should grant him federal habeas relief.

The Sixth Amendment provides that a criminal defendant shall have the right to "the assistance of counsel for his defense." U.S. Const. amend. VI. When a convicted defendant claims that his counsel's assistance was ineffective, the

defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." Putman, 268 F.3d at 1243. Reviewing courts must be highly deferential in reviewing a counsel's performance, and must utilize the strong presumption that counsel's performance was reasonable. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315. Under the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. 2068.

Here, the state court's decision was not contrary to, or an unreasonable application of, clearly established law. First, while the state court did not expressly cite Strickland, it nonetheless cited Johnson v. State, 570 S.E.2d 344, 345 (Ga. Ct. App. 2002), which in turn cited the ineffective-assistance-of-counsel standard set forth in Strickland. See Duran, 619 S.E.2d at 391-92. Moreover, the state court

18

analyzed Duran's claim in order to determine whether he suffered any prejudice as a result of his counsel's actions. Id. at 391. Thus, the state court correctly identified Strickland as the controlling law and properly applied it to Duran's ineffective-assistance-of-counsel claim. See Robinson v. Moore, 300 F.3d 1320, 1343 (11th Cir. 2002) (holding that, "[i]t is well established that the Supreme Court's decision in Strickland is the controlling legal authority to be applied to ineffective assistance of counsel claims") (quotation omitted). Further, Duran does not argue, and the record does not suggest, that the facts of this case are materially indistinguishable from the facts in Strickland. See Putman, 268 F.3d at 1241.

To the extent that Duran argues on appeal that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented," he has not met his burden of proving by clear and convincing evidence that the state court's factual findings were incorrect. See 28 U.S.C. § 2254(d)(2), (e)(1). At the suppression hearing, Detective Edkin testified that Duran did not appear to be under the influence of alcohol or narcotics during the interview, and he responded to Edkin's questions coherently. The trial court also viewed a videotape of Duran's interview. Thus, there was sufficient evidence to support the trial court's conclusion that Duran's statements were knowing and voluntary, and Duran offered no evidence to show that he actually was intoxicated or that his

19

statements were otherwise involuntary.  Moreover, in light of the fact that the trial court determined at the pre-trial suppression hearing that Duran's custodial statements were voluntary, it would have served no purpose for counsel to call an expert witness at trial in an effort to show that Duran's mental state at the time of the police interview rendered his statements involuntary.  Therefore, counsel had no grounds upon which to challenge the voluntariness of his statements, and counsel cannot be deemed ineffective for failing to raise an issue that has no merit. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990).

Furthermore, other than his speculative assertion that the trial court would have suppressed his statements had his counsel called an expert witness to testify about the effects of inhaling paint fumes, Duran offers no evidence to show that an expert would have caused the trial court to suppress his statements, especially since the trial court already had found during the pre-trial suppression hearing that his statement was voluntary.  See Strickland,  466 U.S. at 687, 104 S. Ct. at 2064 (explaining that, to establish ineffective assistance of counsel, a counsel's deficient performance must have prejudiced the defendant).  Similarly, Duran's claim that an expert witness would have prompted the jury to believe his testimony and disregard the statements he made during the police interview is conclusory and speculative, and does not amount to a showing of prejudice.  See Tejada v. Dugger,

20

941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to an evidentiary hearing or federal habeas relief on his ineffective-assistance-of-counsel claims where the claims are conclusory or wholly incredible). Duran thus failed to satisfy either prong of the Strickland standard because he did not show that his counsel's decision not to call an expert witness was deficient or that, to the extent the decision was deficient, he suffered prejudice as a result. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064 (holding that, "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

Duran has not met his burden under 28 U.S.C. § 2254(d). In light of the foregoing, the district court's denial of Duran's § 2254 petition is

**AFFIRMED.**